**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2470-18T1

IN THE MATTER OF
JENNIFER ROSENSTOCK,
an Incapacitated Person.

_____

Submitted January 28, 2020 – Decided September 11, 2020

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. CP-0227-2007.

Weinberger Divorce & Family Law Group, LLC, attorneys for appellant Joel Rosenstock (Jessica Ragno Sprague, on the briefs).

Meyerson Fox Mancinelli & Conte, PA, attorneys for respondent Sandra Rosenstock (Lawrence N. Meyerson and Matthew M. Nicodemo, on the brief).

PER CURIAM

Joel Rosenstock, father of Jennifer Rosenstock, the subject of this guardianship proceeding, appeals from the fee provisions in two orders

resolving the petition of his ex-wife Sandra Rosenstock, Jennifer's mother.[1]

We affirm the provisions of those January 3, 2019 orders directing Joel to pay fifty percent of the fees to the limited guardian appointed to replace Joel and Sandra as Jennifer's co-guardians and denying his application to have Sandra pay his fees in this matter. We reverse those aspects of the fee order directing that Joel pay sixty percent of the court appointed attorney and temporary guardian's fees and assume $6000 of Sandra's fees, agreeing with him that the court improperly premised those fee shifts on the hearsay statement of the court-appointed counsel and temporary guardian regarding Joel's unwillingness to resolve the fee issues in mediation.

Jennifer has a variety of developmental and intellectual disabilities and at fifteen was diagnosed with a psychiatric disorder necessitating an out-of-home placement. She was declared an incapacitated person when she turned eighteen in 2007, with Joel and Sandra appointed co-guardians of her person and property. Her parents thereafter engaged in a very acrimonious divorce after a twenty-three-year marriage. In their property settlement agreement executed at the time of their divorce in 2010, Joel and Sandra acknowledged

---

[1] Because all three of these individuals share the same last name, we will refer to them by their first names throughout, intending no disrespect by our informality.

Jennifer's continuing special needs and their role as her co-guardians. They also agreed to "exert every reasonable effort" to ensure that Jennifer had unhampered access to each of them and that they would foster feelings of affection between each of them and Jennifer. In an acknowledgment of the bitterness of their divorce, the parties agreed "that all issues concerning Jennifer," including parenting time, selection of doctors and schools, applications for aid, the funding of a special needs trust and their percentage share of Jennifer's, unreimbursed expenses would be addressed by a parenting coordinator.

At the time of Joel and Sandra's divorce, the parenting coordinator reported that Jennifer, who was then in a residential treatment facility in Massachusetts, regularly communicated and wanted a relationship with both her parents, and was clear that she didn't want to be put in the middle of their disagreements. By 2013, however, after nearly three years of working with the family, the parenting coordinator reported a breakdown in the relationship between Jennifer and Joel, and concluded that Jennifer "had been encouraged to reject her father because of his remarriage." In a report to the court, she recommended the appointment of a forensic psychologist "experienced in issues of parental alienation" because she believed that Sandra was

A-2470-18T1

transmitting her feelings about Joel to Jennifer, and that the only way to forge a reconciliation between them was therapeutic treatment.

The court appointed a forensic psychologist but therapy was not successful. In 2013, the family judge restrained Sandra from further acts of alienation and by 2016 had relieved Joel of any and all support obligations for Jennifer based on Sandra having cut Joel out of Jennifer's life and prevented him from acting as her co-guardian, and awarded him half his fees on the motion. Except for court ordered appearances, Joel had not been able to see Jennifer since 2012.

A little more than two months later, Sandra filed this action in the Probate Part to convert Jennifer's plenary guardianship to a limited guardianship and to remove Joel as Jennifer's co-guardian. As to Joel's removal, Sandra averred that Jennifer had "chosen not to have a relationship with her father," and, notwithstanding her wishes, Joel persisted in his efforts to "force Jen into therapy and visitation against her wishes." The Probate Part judge issued an order to show cause why the relief requested in Sandra's petition should not be entered and appointed an attorney for Jennifer.

Joel answered and filed a cross-petition in which he recounted Sandra's acts in alienating Jennifer from him, the Family Part's findings, and the order

4

relieving him of any further financial responsibility for Jennifer. He averred based on "the information available to [him]," that Jennifer continued to need a plenary guardian, and asked that he and Sandra continue to act as her co-guardians, or, alternatively, that Sandra be removed or a neutral third-party be appointed in their stead.

As the Probate Part judge acknowledged in his opinion on the fee applications, he had limited involvement in the case. The parties went to mediation in April 2017, where they agreed that Jennifer had made substantial progress toward independence in the four years she had been living in a group home in New Jersey, to the point that she required only a limited guardianship. They also agreed that both Joel and Sandra would resign as co-guardians, and that a neutral co-guardian they and Jennifer could agree on would be appointed in their stead. Until a permanent, limited guardian could be appointed, they agreed the court-appointed attorney would serve as a temporary limited guardian for Jennifer. What they apparently did not agree on was the fees.

The consent judgment drafted by Sandra's counsel after the mediation provided that the cost of the mediator and the fees for the court appointed counsel would be split evenly between Joel and Sandra with each being responsible for their own counsel fees, and that the temporary limited guardian

would receive a fee for his services to be approved by the court. The agreement did not address payment of the limited guardian's fees. The consent judgment for conversion from plenary guardianship to temporary guardianship and appointment of a temporary limited guardian ultimately signed by the parties and executed by the court in February 2018 provided, with regard to the fees, that the mediator's costs would be split evenly between Joel and Sandra, but all other fees, those for both court-appointed counsel and the temporary guardian and allocation of the parties' fees incurred in the proceeding, would be submitted to the court for resolution. The signed agreement, like the draft, was silent as to payment for the fees for the permanent limited guardian.

The parties submitted briefs and fee certifications within weeks. Each argued they were entitled to fees under Rule 4:86-4(e). Sandra argued that Joel should bear the entire sum of her fees and costs of $56,857.24 based on his alleged bad faith, and that the parties should split evenly the fees of the temporary guardian, as well as those costs of the limited guardian to be appointed. Sandra argued that she and Joel should also split evenly the cost of court appointed counsel through the date of mediation, but that Joel should be responsible for one hundred percent of the fees from after the mediation in April 2017 through the court's execution of the consent judgment on February

6

18, 2018, based on his unwillingness to execute the consent judgment as noted by court-appointed counsel. Joel argued that he should not be responsible for any fees for Jennifer based on the Family Part order relieving him of any further financial responsibility for her in accordance with the doctrines of law of the case and collateral estoppel. He argued Sandra should be responsible for his fees based on her bad faith in having alienated Jennifer from him and preventing him from serving as her co-guardian.

The Probate judge did not issue his bench opinion on the fee issues for six months. He did not hear argument, and the parties offer no explanation for the delay. The orders memorializing his decision were not entered for another four months, for reasons also not explained.

In his oral opinion, the judge rejected Joel's argument that the court was bound by either collateral estoppel or law of the case from imposing fees related to this proceeding under Rule 4:86-4(e). He also determined there was no basis for a fee award to Joel under Rule 4:86-4(e) because Joel was not the party seeking guardianship. Looking to the Rule and In re Landry, 381 N.J. Super. 401 (Ch. Div. 2005), and acknowledging it was "[v]ery hard for [it] to make [a] determination as to what's going on here, the dynamics between mother and father, especially when [it] consider[ed] that there was this long-

A-2470-18T1

term matrimonial action that just continued . . . really until recently, even though they had been divorced for . . . a long period of time," and also noting that Jennifer was without assets from which any fees could be paid, the court determined that each party should bear their own fees for the proceeding and should split evenly the fees of the court-appointed counsel and temporary guardian for Jennifer, and, going forward, the fees for the limited guardian whom they both agreed should replace them, with one exception.

Based on the court-appointed attorney's unsworn statement in his report to the court that the matter dragged on after mediation because Joel was unwilling "to approve of a final pleading confirming the terms reached at mediation in April 2017," despite also noting that "[t]he parties were able to agree to certain parameters [for how to define a major medical, legal or financial decision] at mediation which were further negotiated post-mediation" (emphasis added), the judge found "it was [Joel] who would not do what was necessary to resolve the matter." The judge accordingly shifted $6000 of Sandra's $56,857.24 fee to Joel and allocated an additional ten percent of the court-appointed counsel and temporary guardian's $19,539.80 fee, or $1,953.98 to Joel, making that split 60/40 in favor of Sandra.

A-2470-18T1

Joel appeals, contending the Family Part order relieving him of any further financial responsibility for Jennifer precluded the Probate Part judge from allocating any percentage of the fees for this proceeding, and the cost of the neutral limited guardian he advocated for going forward, to him. He repeats the arguments he made to the trial court as to why Sandra should have been made responsible for his fees. He also contends the court erred in allocating a disproportionate share of the court-appointed counsel and temporary guardian's fees and the $6000 of Sandra's fees to him based on statements by the court-appointed counsel, repeated in Jennifer's counsel's brief, about what occurred in mediation. He argues those statements should not have been considered pursuant to N.J.S.A. 2A:23C-4, the privilege against disclosure of mediation communications.

A trial court has broad discretion in making a fee award permitted by rule or statute, which we only rarely disturb, and only for abuse of discretion. See Rendine v. Pantzer, 141 N.J. 292, 317 (1995). We have no hesitation in agreeing with the Probate Part judge that he was not bound either by the doctrines of law of the case or collateral estoppel from requiring Joel to contribute to the fees of this proceeding or the costs of employing the neutral limited guardian he asked the court to appoint for Jennifer. This was a

separate proceeding from the parties' post-judgment disputes over Jennifer, and, indeed, was precipitated by the Family Part judge's undoubtedly correct holding that he did not have jurisdiction over Jennifer's guardianship, or the disputes between her co-guardians.

This is a sad case in our view. A review of those proceedings in the Family Part included in the parties' appendices makes clear that the close relationship Joel enjoyed with Jennifer was destroyed following Joel and Sandra's divorce. The Family Part judge had no doubt that was in large measure due to Sandra's transferring her feelings about Joel to Jennifer. Although the court made several efforts at Joel's behest to restrain Sandra from acts of further alienation, and to attempt a rapprochement between Jennifer and Joel, it recognized that Jennifer's psychiatric condition limited any therapist's ability to challenge her perceptions about her father. More than one professional warned that challenging Jennifer risked worsening her condition, which had stabilized in recent years.

The Family Part judge ultimately held a hearing at which he took testimony from Jennifer. Noting afterwards that Jennifer adamantly believed things about Joel that were demonstrably untrue, the judge found there was no further relief Joel could obtain in the Family Part beyond relieving him of any

10

financial obligations voluntarily undertaken at the time of the divorce, which the court ordered. Shortly thereafter, Sandra instituted this action to convert Jennifer's plenary guardianship to a limited guardianship and to remove Joel as Jennifer's co-guardian because, according to Sandra, he was working against Jennifer's independence and "unwilling to adapt to [her] change in circumstances."

Joel, of course, had been unable to see Jennifer for the prior four years, and had been prevented, in the Family Court's view, from acting as her co-guardian by Sandra. When he became aware through Sandra's institution of this proceeding of the remarkable progress Jennifer had made toward living more independently, he abandoned his position that the plenary guardianship should continue and supported institution of a limited guardianship. Although Joel came to recognize that Sandra was right that Jennifer was deserving of more independence than permitted in a plenary guardianship, and he succeeded in his goal of removing Sandra as Jennifer's guardian and installing a neutral third-party as Jennifer's limited guardian, he refused to acknowledge he had any responsibility toward the fees incurred in this proceeding and going forward, other than an equal share of the mediator's fee.

11

Because the Probate Part judge acted well-within his broad discretion in making each party responsible for their own fees and making each share equally in the fees of the court-appointed counsel and temporary limited guardian, as well as the fees of the neutral third-party limited guardian appointed for Jennifer in this proceeding, we find no basis to disturb those orders. But as there was no competent evidence in the record that Joel was unwilling "to approve of a final pleading confirming the terms reached at mediation in April 2017," and that it was Joel "who would not do what was necessary to resolve the matter," and the judge's lack of any first-hand knowledge of such, we are constrained to find he misapplied his discretion in making Joel responsible for $6000 of Sandra's fees and shifting $1,953.98 of the court-appointed counsel and temporary guardian's fees from Sandra to Joel.

We accordingly reverse those limited aspects of the January 3, 2019 order on fees and remand for entry of an order consistent with this opinion, leaving each party to pay their own fees and splitting evenly all other fees the court ordered the parties to assume. We affirm in all other respects.

Affirmed in part, reversed in part and remanded for a conforming order. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION